All right, do we have Ms. Lyston? Are you? Yes, Your Honor. And Ms. Fritz, can you hear us? Yes, Your Honor. All right, why don't we proceed with the case of United States v. Goins, and Ms. Lyston, we'll hear from you. Thank you, Your Honor. May it please the Court, Jenny Lyston v. Christopher Goins. Your Honor, so this report aired here in denying Mr. Goins' 1935 Johnson petition. This Court held in United States v. Hodge that the government must identify all convictions it wishes to use to support a defendant's ACCA sentence enhancement at the time of sentencing. The government cannot identify only some ACCA-qualifying convictions at sentencing, thereby limiting the defendant's notice of which convictions to contest, and only later raise additional convictions to sustain an ACCA enhancement once the burden of proof has shifted to the defendant. Your Honors, the district- Let me ask you, you started out with that argument. What were the issues we certified for appeal? The issues certified on appeal were whether Mr. Goins' breaking and entering conviction and the assault conviction, which is the- We only certified two questions, right? Yes, Your Honor, but we contend that the Certificate of Appealability encompasses this Hodge argument. Well, why don't we address the two questions? One is whether North Carolina breaking and entering is a violent felony, and two, whether assault with a deadly weapon with intent to kill, inflicting a serious injury, is a violent felony. And Your Honors, I realize, of course, that those are sort of phrased in the abstract, but, of course, they don't exist in a vacuum. They exist in this case. I understand, but those were the questions we certified. Yes, but a part of that, necessarily, was did the district court err in determining that this was a violent- We didn't ask that question. We didn't ask whether the court erred. We asked whether those were violent felonies. And, of course, Townsend answered the second one already, hasn't it? It did, Your Honor. So we're left, really, with the decision whether breaking and entering on appeal, that's what we certified. I mean, we're here on a 2254 pertinent to a Certificate of Appealability. And so, Your Honors, we contend, however, that under this court's case law, that when this court issues a Certificate of Appealability and certifies certain issues, this court's case law seems to indicate there is a decent amount of latitude built in there as to the arguments that a litigant may make on appeal under those issues. And we contend that, basically, the district court erred in saying that the breaking and entering conviction was a violent felony and that the assault conviction was a violent felony when the PSR never designated those convictions as violent felonies, as legitimate ACCA predicates. And I would point to this court's decision in Winbush, and I would remind the court that the COA, the issue certified in Winbush, was whether the district court erred by rejecting Winbush's claim of ineffective assistance of counsel upon the finding that Winbush's Ohio robbery conviction constitutes a crime of violence. The difficulty with that analogy is that we asked, in that case, whether the district court erred in doing something. In this case, we asked two abstract questions, whether particular crimes are crimes of violence. Now, we can handle what to do if we conclude that they are or they are not, but I don't see how you get around this simple question. Is A, a crime of violence? Is B, a crime of violence? So, your honors, again, I do believe that this is built into the issue that has been certified on appeal. If it is not, your honors, then that is my mistake completely. I have to say that this was something that I thought about. I took this appeal over for a colleague, and when I saw that it had a Hodge issue, my first thought was, do we need to expand the Certificate of Appealability?  Well, there's a way to do that. There's a way to do that. There is. But our local rule says that if you don't do it, we're not allowed to consider anything in the brief that refers to it. So, again- 22, local rule 22. You're familiar with that, aren't you? Yes, your honor. But then, when I looked at Winbush, I thought, I think we're fine here. And not for nothing, but I have to say, I consulted with more experienced appellate colleagues, and everyone was on board. Everyone agreed that we didn't need to expand. Tell us more about Winbush, because I'm not in disagreement on that to some extent. I mean, Winbush is pretty expansive. I don't think it's as limited as it appears. I mean, when you look at Winbush, and the issue that was presented, and ultimately what this court then considered, the issue was ineffective assistance of counsel. How in the world it then gets into a Hodge situation is just baffling here, but they did. And that doesn't look too limited to me. It was an ineffective assistance of counsel. Let me go back to Winbush, make sure I got it right. You gave two issues, it says it was not a career sentence, and that it was an ineffective assistance of counsel. And then the court got in a Hodge issue. Yes, sir. And it resolved it. I think anybody reading that would say that the same thing exists here. It looks pretty clear to me. And I would just also add, Your Honor, that- I think without it, you'd have some problems, but Winbush is on fours with this situation. There's no way in the world you can get to that issue if you don't do something and expand it. And the other thing is, I suppose, granting, expanding an issue of, this court has the authority to expand it. Of course, the limitation is, well, could we do it now? I mean, could we do it now? And then if you want to, we'll order a supplemental briefing on it. Because we're dealing with fairness here. And ultimately, I'm not so convinced we could not right now certify this or to expand. And if you felt like, well, must we do a full briefing? We'll just say, have some more briefing on it. But you don't need briefing on it because everybody's briefed it. So I think, ultimately, when we're dealing with cases like this, this court and the courts of all of its way, where we have defendants in situations like this, we get in other situations that you find all kinds of reasons to look beyond the evidence and get to it. But this is our point. You got Winn-Busch. And I don't see how you get around Winn-Busch. I agree completely, Judge Winn. I would also say that you do have, this court does have the authority to expand the Certificate of Appealability. And I do think, if there's any question that the Certificate of Appealability, as issued, does not cover this, I think it would be appropriate to expand, especially given how low the standard is for issuing a Certificate of Appealability. It's just on, is this an issue on which reasonable jurists could debate? And I think this issue absolutely presents a strong meritorious issue. And so, we would stand on Winn-Busch, Your Honor. So, Your Honors, we believe that the court did err under Hodge in relying on these previously non-designated ACCA convictions to sustain Mr. Gowen's ACCA status. The court found that, now, of course, the court found that the PSR's designation of the predicates was a typo. However, we believe that that is both factually dubious and legally immaterial. How many typos is this supposed to have made? I mean, was it one or what? It was more than a typo. It must have had, I don't know. Tell me about the typo. What were the actual numbers and what does it contain? Yes, so, Your Honor- Because he said that no one testified it was a typo. He makes the determination on your own it was a typo. Yes, Your Honor, the district court came up with this completely on their own. The PSR says that the ACCA designated the ACCA predicates as paragraphs nine, 14, 16, and 17. The district court said, well, those are categorically excluded and so those must be a typo and so I'm gonna say it's paragraphs 10, 15, 17, and 18. But there's no contemporaneous evidence in the record, Your Honor, to support that designation. What about the government's allusion to the, during sentencing? The court didn't refer to a stolen property crime. The court referred to the crimes. In other words, the explanation the court gave is there was a paragraph inserted that knocked off the numbering so that the actual numbers are really 10, 15, 17, and 18. And, but those crimes were alluded to by the U.S. attorney during the sentencing. Absolutely, Your Honor. And everybody assumed, everybody assumed that that was correct. Nobody took objection. So nobody objected. I do think that's interesting. So I'll say two things. One is, you're right, on JA 34 at the original sentencing, the government argues he has four felonies that count for the armed career criminal. Each of those is extremely violent in terms of the criminal conduct. Well, Your Honors, then how could paragraph 10, the breaking and entering conviction in which he broke into a carburetor shop and stole a few items when he was 16, that's not an extremely violent, that's not a violent criminal conduct. So I would also point out that the government on direct appeal to this court from, and Mr. Gowen's appeal to this court on direct review specifically told this court that the felony possession of cocaine conviction at paragraph nine was one of the ACCA predicates that it was relying on. And so I think that's pretty strong evidence that at least paragraph nine wasn't a typo because the government- But what you're really saying is we ought to have the government make him try the case. I mean, you're gonna put somebody in jail for years and years. You don't come back later on and says, no, you don't say it. The judge says it. You don't never say it. There's a typo. And then you go in and go and look at the argument and dance it around and come up says, okay, this is what this means. It's not a hard thing to do. If you're gonna put someone, it's only three. It's only three offenses that you need. Just tell them what the three are. Not put down a bunch of numbers and then come back and say, well, there's a bunch of typos in here. It didn't mean this. It meant these other ones here. When hearts tell you, you can't look at the others, but now you have, instead of, because you know you got the odds. If it didn't have odds, you could have just said, oh no, we'll look at these other ones here, but you can't do that. So now you say, oh, this must have been typos. It's gotta be these others. I mean, you could do it in every case. You probably could do it in every case that I can think of. If that would have additional factors in there. Now, I guess nowadays, why wouldn't you include the rest of them? I mean, I don't understand why the government, when they're doing it, why would you not just give them all? I would think you would. I don't see the prohibition for doing so. Why would you just limit yourself? And so, your honor, I agree completely. I do think that at best, there is a mass amount of confusion here over which of these convictions qualified as ACCA predicates at the time. And this is the important thing about Hodge. It says you have to have the notice at or before sentencing. So it doesn't matter at the time of collateral review. It matters at sentencing. And I think there is a lot of confusion. And there is no evidence in the record to show that Mr. Goins had the notice that Hodge says that he needed at the time as to which ACCA predicates were going to sustain that ACCA status. And especially in this, you can't come back on collateral review and say, oh no, we just, it was a typo, no biggie. And we designate additional convictions. And so, your honor, now, I would say that Judge Niemeyer, I know that you wrote United States versus Rumley. I do think that perhaps the best thing to do here is to just send it back to the district court for reconsideration in light of Hodge, in light of Rumley. The district court can then make the decision whether it wants to order a whole new pre-sentence report, have a whole new de novo resentencing. And I will just point out that just because Mr., and we'll see, give Mr. Goins his opportunity, give him his notice, give him his due process. And if he remains ACCA at the resentencing, that doesn't necessarily mean he's going to get the same sentence. Because of course, the court in this case gave a five year upward departure from the bottom of the ACCA sentencing range. And so, I think at a resentencing, the district court could very well think that, well, in light of the fact under Johnson, he has far fewer ACCA predicates now in light of the rehabilitation evidence of the last 10 years. Why would we send it back? Why wouldn't we just order resentencing? I mean, it seems to me, if you're right about this, that there wasn't an error. I think that's actually a close call whether there was an error or not, because it's not as confusing as it sounds. It's just one paragraph number offset. And if the pre-sentence order between its original draft and the final inserted a paragraph, it would throw all the paragraphs off by one. And the district court thought that's what was going on, because at sentencing, they didn't refer to the stolen property, nor did they refer to the drug. They referred to the others. And so, the court assumed that that offset in numbers was just an error. But if it wasn't an error, I guess your argument, your suggestion is we could have the district court determine whether it is, or if you don't think it was an error, why don't you just request a resentencing? And so, I mean, that would be our first request, Your Honors, is just to have a resentencing. Because I don't think under Hodge that he qualifies, he doesn't have the three necessary predicates under ACCA that were designated at the time. But I would also- Well, Hodge holds that we can't jumble around the predicates on collateral review, because it didn't give your client notice and the opportunity to defend, and it changes the burden of proof and all that stuff. And I would just point out, Your Honor, so you pointed, you noted that maybe the numbering was off by one, and I would just remind the court that I know it doesn't appear in the record, but I can assure the court that the draft PSR is absolutely identical to the final PSR, and I would be happy to submit that. And I'm, you know, if the court, I believe, had just looked at the original draft PSR, the court would have seen that there, you know, there wasn't any off by one sort of renumbering going on there. So, but I believe, Your Honors, that this court should send it back to the district court because of the Hodge error, Your Honors. And if there are no other questions, I will save the rest of my time for rebuttal. All right, thank you. Ms. Fritz. Good afternoon. May it please the court. Christine Fritz on behalf of the United States, and we're asking you to affirm the judgment of the district court. Here, I'd like to begin with the certificate of appealability because I think that is an important issue because this court certified essentially two questions of law, whether assault with a deadly weapon with intent to kill inflicting serious injury is a violent felony, and whether the same can be said of breaking and entering. And the case law is absolutely clear now. It, all of those qualify. And for example, breaking and entering has qualified since 1992. So I think it was pretty clear to everybody at the time of this sentencing what convictions were being looked at. Now, what's interesting is that defense counsel on appeal had asked to expand the certificate of appealability to reach breaking and entering, which quite frankly is confusing to me because the defendant couldn't have raised a freestanding 2255 challenge to breaking and entering in the district court to begin with. There wasn't any intervening Supreme Court law that would trigger the one year statute of limitations that would have allowed them to bring that up. So, and effectively, that's what the district court said when it indicated that breaking and entering is a knack of predicate. There's no dispute about that. And you can't challenge that under Johnson. And then the district court proceeded to address the two assaults with intent to kill. So we have a 2255 that initially challenged all three of the assaults. Then we have an expansion of a certificate of appealability at the defendant's requests for breaking and entering. And now after Hodge is issued, we have a Hodge claim saying that it was unknown at the time of the sentencing, which were the active predicates. And I would submit to the court that that doesn't hold true on this record, that the concerns that were animating this court's opinion and Hodge are not present here. We have the defendant who had a breaking and entering, which has been a crime of, or has been a violent felony since the 90s. And he had two assaults with intent to kill. And he had another assault with intent to kill. The PSR, or I'm sorry, a third assault that did not have the intent to kill. The PSR made it clear that there were four violent felonies that were being relied upon, which that in and of itself distinguishes it from Boyne's because in, or I'm sorry, distinguishes it from Hodge, because in Hodge, this court emphasized in its opinion that there were three and only three active predicates. So here there were four. And now we know that in light of Johnson, one of them doesn't count. So now we're down to three. But I think that the court was, the district court didn't have any difficulty saying that this was a typographical error because all of the paragraph designations were off by one. Essentially, if you put another rung in the ladder, everything was one rung higher. And it was so obvious to the court that this was a typographical error. And a court can take, under Rule 36, a court can correct an error that it sees after giving appropriate notice to a party. And I'll point out that there was an interim opinion in this case where the breaking and entering was relied upon. And the footnote indicating this as a typo, the court was attentive, brought this to everyone's attention, and there was no issue raised whatsoever regarding the breaking and entering or regarding notice or opportunity to be heard. And I'll note that the defendants did file an objection to that interim opinion in an abundance of caution to protect appellate rights, specifically to the finding that assault with intent to kill is an ACCA predicate. And I'll also point out the nature of the felonies, which I think, which is what also made it easy for the court to realize that at some point in the drafting process, whether it was when the probation officer was drafting his own first rounds of the draft, whether it was the draft that was sent out to the parties, I did attempt to get a copy of that. I was unable to locate one. But effectively, a paragraph got added prior to the criminal history, because otherwise there would have been simple possession of cocaine, possession of stolen goods, a misdemeanor assault being relied upon as ACCA predicates. It was so obvious to the district court that that wasn't the case, that she wasn't gonna rely on that, that she noted that and fixed it. And I will point out going into this, going into this sentencing, there was no dispute, the original sentencing, there was no dispute that Mr. Goins was ACCA. He had shot somebody in the stomach. He gutted somebody with a survival knife. He attempted to slice a woman's throat. And then he broke and entered into a structure. He is the type of defendant for whom ACCA was created. And he's not like Goins, he's not like Hodge. Because our position is that those were the ACCA predicates all along. Breaking and entering, assault with a deadly weapon inflicting serious injury, assault with a deadly weapon with intent to kill inflicting serious injury. So this isn't a substitution or a replacement case. Ms. Fitz, you're saying that these were the ACCA predicates all along, but were these the ACCA predicates designated for consideration in the pre-sentence report? These were not the paragraphs that are referenced in the pre-sentence report. So why don't we just want to do it right? That's what I don't understand. You know, we're reading into what the district court thought about this typographical error, but you know, we're talking about somebody who is going to be put away for a long time and deservedly so. But why shouldn't the system operate properly so that it's clear that this was done carefully and with integrity? What's the loss to the government on that? Our position is that they were ACCA all along. And I think what's complicated in this particular case is that this notice issue came out of nowhere on appeal after Hodge was decided. That makes it different than Hodge. Hodge had three convictions designated and then another one was pulled in. And immediately defense counsel said, I object. And actually in Hodge, the government initially conceded. So the defense counsel for Hodge immediately said, I object. I need time. This wasn't relied upon before. I want to research the legal issue of estoppel and waiver and all these other things. And then that same attorney filed a supplemental response, emphatically contending that it should not be permitted that this other conviction be relied upon. And also in that particular case in Hodge, there were concerns about whether the conviction was in fact a qualifying predicate because that conviction dealt with a controlled substance offense. And defense counsel in Hodge represented that as of the time his response was due, he had not been able to determine definitively the maximum sentence to which Hodge could have been exposed. Right, but it sounds like your argument is since we all know under Rumley what's gonna happen, let's just call it a day. Isn't that what you're essentially saying rather than to procedurally go through the hoops and give him the sentence that he deserves? My response to that is that the government also thinks that procedure is important. Here, the certificate of appealability doesn't extend to that. Notice was never, ever presented as an issue to the district court. So if we're going to extend it- Is there any reason the court can expand it now? Could we do this now? I mean, it seems like we conferred this jurisdiction on ourselves. I know at the time of the briefing, and if the briefing is important, we'll just say, give us some supplemental briefs on it. Can that be done? Is there any prohibition? My question is, is there any prohibition on this court now from expanding the appeal of the certificate? I don't believe there is. I think it is a separate inquiry, and that did not happen here. But if the court were to expand the certificate of appealability- I know things didn't happen, but the whole business of those typographical things didn't happen either. The court came up with that. We're doing the same thing district court did, all that you argued you could do. This is just a simple question, and it's really not going, as Judge Keenan has alluded to, it's really not saying, you know, you're doing something so special, you're just being fair. And that seems to be somewhat important in these procedures, I would think so. You just want to do the fair thing. It's, I mean, we're not saying you should go free or should be in jail. This is, that's a procedure. Let's follow the procedure. And if now it's here, here's another procedure, didn't expand appealability for the certificate. Well, we can, so we'll do it. I mean, if we do that, I'm not sure any judge couldn't do it. I mean, I don't know if you need a whole panel, but there was maybe more than a panel, you do need it. But it seems like to me, we could expand it. So if you get beyond the appealability aspect in terms of the certificate, then you get into the merits of it, which is where I understand a great deal of your argument has been, which would tell me you would need a supplemental briefing if you did expand it, because you pretty much have argued it from that perspective. I think again, focusing on the procedure, since this was an issue that was never raised to the district court, it would have to be subject to plain error review. And that is important- What issue are you talking about? What are you talking about? The issue of the expanded certificate? No, whether a Hodge, a Hodge argument. Defendant's Hodge argument, which has been minted- Oh, the judge knew that was there. The judge had to know that was there, because if you didn't do that, you would have never gone into the topographical stuff. You just said, we're going to look at these other issues here, other convictions. You had to know that was there, because I'm going to get a judge a lot of credit on that. That judge knew that Hodge was a problem in this case, if you didn't find some reason to say, hey, we can do it. Don't you? I mean, you think the judge didn't know about this Hodge thing and did this? I absolutely think the judge didn't know about Hodge, because Hodge wasn't decided until this case was on appeal, on a certificate of appealability that was limited to assault with intent to kill. So no, I don't think it's appropriate to say that necessarily the judge was thinking about Hodge. I think the judge was going through and carefully looking at the ACCA predicates, and it realized, oh, wow, these were off by one, because I obviously was relying on the two assaults where he attempted to kill somebody as ACCA predicates, as well as the breaking entering, which has qualified. So I think that a Hodge-type argument, either, I mean, I suppose it was raised by the district court and defendant didn't have any problem with it, so maybe we have some sort of waiver, or it was never raised, because everybody knew what the ACCA predicates were. And so now the defendant has the obligation to demonstrate plain error on review. And Judge Keen, I think that's- Is this something we're gonna see happen, is this gonna be happening over and over again, we're gonna be having to deal with this, or you think this is a one-shot deal on this case? What happened here? You think this kind of case is coming up again? I think that this was a one-shot case. I truly believe that a paragraph was added by the probation officer during the drafting process. I think so, too. I think it's just a matter of, why don't we just have this judge in this one case do it right, like everybody else, be done with it? I mean, it's not like what we do is gonna change the flow of life forever. They just tell you, in fact, it'd be pretty instructive. This is how you do things, and it probably would make, you didn't try the case, I'm sure, you might have, I don't know, but whoever tried the case, a little bit more careful how you do these things. Seems to me simple. You got three predicate offenses, why don't you just list them right there in front of them? Or if you got more, I don't know if there's any prohibition to putting more than what's up there than you need, because we've said that, you've listed four or five, well, and then we'll say, well, those two weren't any good, so well, you still got three. I've seen that. It doesn't matter if you had that other stuff up there, you had those three, that was it. You can put up there that he was out barking at the dog one night and over-frightened the dog, and that's not an offense, but this is what doesn't matter, because you got three others. So I guess I don't understand why, when you're faced with a case like this, as serious as this, with a man with a record as extensive as this, why wouldn't you put it all in there? Our position is that it was a typographical error that was overlooked by the parties, by the district court, by this court on direct appeal, and when the district court judge was caused to look at the specific offenses again, she realized that typographical error. By this court on direct appeal. We didn't overlook, we don't make that determination. I will say one of the primary arguments advanced on direct appeal was that the ACCA designation sentence was sufficient such that any kind of upward departure above and beyond that was inappropriate. So I think that it's fair to say that throughout the life of this case, until Hodge came down, everybody knew what the predicates were. And I'll also say, Judge Wayne, in response to, at the time, there wasn't a requirement that these be listed, and I'll point out that now, in our circuit, I believe the practice is to not just list the paragraph number, but to also list the name of the offense and the case number, which had that been the practice back then, I think this whole thing would have been avoided. It probably would have had the incorrect paragraphs, but the correct crimes and case numbers. And ultimately, it is the defendant's obligation to persuade this court that there was an error, that the error was clear, that it affected his substantial rights, and persuade this court that you should recognize it. And Judge Keenan, you had mentioned that it's likely that the same thing is going to happen. And we believe that, yes, he remains- No, I was suggesting that that was implicit in your argument for us to take no action here, because it was your view that nothing different would happen. Okay, all right. And I think, though, that the defendant has to persuade you that there would be a different result, that had this Hodge error not happened, and I don't think it's a Hodge error, I think it's a typo, and it was properly characterized by the court as such, but had this not happened, the result would be different. And I do believe that Rumley comes into play, because critical to what I understand the defendant's argument to be is that you are frozen in time, and you can never, ever look at the whole realm of a defendant's criminal history. And Rumley refutes that notion. And again- If I understand fairly, I think the defendant's argument is that he wants a resentencing. That's what they want. And they'll take their shot as to whether they can improve their situation on resentencing. But I'm not sure what you're saying is their argument. I don't think they say everything's frozen in time. I think they want a bigger procedure than a collateral procedure to address this. They want a full resentencing, if I understand correctly. My understanding of the reply was the idea that having failed to designate those convictions at the original sentencing, or having the numbers off by one digit, it would never be possible to rely on those convictions for an act of status. And I think that Rumley makes clear that, yes, if there's a resentencing, it obviates the notice and opportunity to object concerns. It also obviates concerns about who bears the burden in the scope of appellate review. Yes, Judge Keenan. Okay, Ms. Fitts, I'm struggling here with whether your brief relied on de novo review. It's like you referenced Hodge in a footnote and mentioned plain error, but then you conducted de novo review throughout your brief in your analysis. So don't we have to go on de novo rather than plain error because you seem to not rely on it? I mean, you noted it in that footnote, but that's not your analysis and not your discussion in your brief. The first step of the plain error review is necessarily whether or not an error occurred. So I tend to think that that in some ways is what I was discussing what happened in terms of arguing that there wasn't actually an error here because he wasn't lacking notice. Our lead argument was, of course, that this is not what the court certified, but if the court were to look at this, it would have to be under a plain error standard of review. Did you raise the plain error standard of review in the body of your brief other than the reference to that one footnote? I raised- You can help me with that because I honestly don't remember. I raised it in the standard of review section. I say that normally it would be de novo for law, clear error for findings of fact. When it's not raised below, review is generally constrained to plain error. However, it's- But you didn't make this specific argument in the body of your case. You know, as I said, I don't recall seeing it, but that doesn't mean it isn't so. I think we primarily focused on not having been error, which is the first prong of the plain error analysis. Okay, thank you. So for all of these reasons, we believe that Mr. Goins' ACCA designation at all times did in fact rest on convictions that were undisputedly ACCA predicates at the time of his offense as opposed to something like a misdemeanor assault or possession of stolen property, and that under the circumstances of the case, everybody knew that. Alternatively, if this court chooses to reach the Hodge issue and find that the defendant has sustained his burden, we would agree that the appropriate remedy would be a full resentencing, at which time the typographical error can be corrected in the PSR, and this can be addressed there. All right, thank you. Ms. Leiston, I think you have some rebuttal. Can I ask you, just as a preliminary matter, the last question that was involved in the dialogue with Judge Keenan, what is your view about the standard of review in this on the Hodge issue? So, Your Honor, we of course contended in our reply brief that plain error does not apply under Winbush, and so we contend that we're not under the plain error standard of review, which, of course, the government did not make an argument in this brief about plain error, but we contend, of course, that even if plain error replied, that Mr. Goins satisfies all the steps in plain error. It's definitely error. It's plain under Hodge. It did affect his substantial rights, and we believe that you should notice the error, and Judge Keenan, I would say, when you were asking about just notice and fairness, I would point you to this court's, the words in Hodge, when in Hodge, this court was quoting the Supreme Court and stating that the public legitimacy of our justice system relies on procedures that are neutral, accurate, consistent, trustworthy, fair, and so I don't think there's any reason to treat Mr. Goins any differently from other defendants who have gotten relief under Hodge, and I would point, actually, there's a wonderful- Well, the question, I know, but the question that I'm raising is clearly the district court didn't address Hodge. As a matter of fact, Hodge wasn't even decided then, and before Hodge, there was no prohibition for looking at the pre-sentence report and finding that there were three ACCA offenses, so Hodge introduced the notion that the government has to designate which ones, especially when disqualification of one would result in a non-ACCA enhancement, but this was not raised below, and it's now presented for the first time above, and the district court didn't get a chance to address it. I do note that the government did state in its text where such argument is presented for the first time on appeal, plain error analysis applies. Now, if plain error analysis applies, then we do have some additional questions as to would it make a difference. And it would make a difference, Your Honor, and I would say that I would point this court, I think it's a great example of how it does make a difference, United States v. Nipper, which I cited in my reply brief, that actually was, in that case, the defendant was granted relief under Hodge and went back for the resentencing, and under Rumley, the district court did determine, get granted a de novo resentencing, got the new pre-sentence report at which Mr. Nipper had adequate notice and due process and all that. The court decided that he did still have ACA status, but it nonetheless gave him a lower sentence on remand at the resentencing, and we think that the same could absolutely happen here, that the district court could determine that now after Johnson, he has a far fewer ACA predicates, and that, and also it could consider evidence of rehabilitation under Pepper. And so, Your Honors, and I would also just point out that everything that you just said about how no Hodge notice was raised below in the district court, the same happened in Winbush, and yet Winbush said still that this was, that the review was de novo. So we don't contend that we're under plain error, however, we feel that even if we are under plain error, that Mr. Goins does satisfy that plain error review. Okay, thank you very much. Thank you. We would normally come down and greet counsel. As you know, that's the practice in the Fourth Circuit, and we cherish it and would love to shake your hands, but please accept our greetings and thank you for your arguments. We'll take a short recess, five minutes. Thank you.
judges: Paul V. Niemeyer, Barbara Milano Keenan, James A. Wynn Jr.